IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CHRIS NOONE**                                                                                    **PLAINTIFF**

**V.**                                                                **CAUSE NO. 3:20-CV-461-CWR-LGI**

**THE OHIO NATIONAL LIFE**                                                            **DEFENDANTS**
**INSURANCE COMPANY; OHIO**
**NATIONAL LIFE ASSURANCE**
**COMPANY; and OHIO NATIONAL**
**EQUITIES, INC.**

**ORDER**

Before the Court is the defendants' motion to dismiss. Docket No. 7. The matter is fully briefed and ready for adjudication. On review, the motion will be granted in part and denied in part.

**I.     Factual and Procedural History**

Chris Noone is a licensed insurance salesman in Jackson, Mississippi. He sells insurance through a broker-dealer called LPL Financial. LPL Financial has a written contract to sell insurance products of The Ohio National Life Insurance Company and its affiliates.

Today's case concerns Noone's sales of a specific Ohio National product: variable annuities with a "Guaranteed Minimum Income Benefit Rider." Most of the details of the GMIB rider are irrelevant to this case. What *is* important is how the commission structure worked when Noone sold a policy with a GMIB rider.

Every time Noone sold his clients one of these policies, the clients paid the insurance premium directly to Ohio National. In return, Ohio National paid commissions, including "trailing commissions," to the broker-dealer, LPL Financial. LPL Financial would then send a share of the commissions to Noone. Ohio National was required to pay trailing commissions for

the life of the annuity. That was spelled out in the written contract between Ohio National and LPL Financial.

As the complaint tells the tale, Ohio National was hemorrhaging money on these products. It decided to cut its losses by refusing to pay trailing commissions. Ohio National stopped paying LPL Financial. As a result, LPL Financial stopped paying Noone his share.

Noone subsequently filed this suit against Ohio National and only Ohio National. (The record does not explain why Noone has apparently declined to sue LPL Financial.) He asserts four theories of recovery: breach of contract, unjust enrichment, tortious interference with business relations, and promissory estoppel.

The present motion followed. It presents what should be a simple question: Can Noone sue Ohio National to recover his trailing commissions?

**II.     Legal Standard**

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A satisfactory complaint will "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 677-78 (quotation marks and citation omitted). This requires "more than an unadorned, the defendant-unlawfully-harmed-me accusation," but the complaint need not have "detailed factual allegations." *Id.* at 678 (quotation marks and citation omitted). The plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

**III.  Discussion**

All agree that Noone and Ohio National do not have a contract. Their relationship always had an intermediary broker-dealer, LPL Financial. So in his complaint, Noone claims to be an intended third-party beneficiary of the contract between Ohio National and LPL Financial. The first question is whether he really is an intended third-party beneficiary.

Ohio National has pointed to several decisions which found salespersons like Noone to *not* be intended third-party beneficiaries of similar contracts between Ohio National and broker-dealers. In *Cook v. Ohio National*, for example, the Sixth Circuit concluded that "taken together, the provisions contained in Section 9 of the Selling Agreements [between Ohio National and its broker-dealer] establish, as a matter of law, that plaintiff [salesperson] is not an intended third-party beneficiary." 961 F.3d 850, 856 (6th Cir. 2020). The Eleventh Circuit reached the same decision a few weeks ago, in a case arising out of Alabama. *See Whatley v. Ohio Nat'l Life Ins. Co.*, No. 19-15014, 2021 WL 1035047 (11th Cir. Mar. 18, 2021).

From afar, these decisions present a debatable interpretation of Ohio law.[1] Noone and salespersons like him are hardly "strangers" to the contract, as Ohio National now describes them. As alleged in the complaint, in this context salespersons meet the definition of intended third-party beneficiaries because they are: (1) essential "to effectuate the intention of the parties," and (2) the parties intended that the salespersons benefit, through the receipt of trailing commissions. *Huff v. FirstEnergy Corp.*, 130 Ohio St. 3d 196, 200 (2011). The contract explicitly contemplates that "representatives" would sell the policies, then specifies how those "representatives" get paid. That the representatives are now declared "incidental" as a matter of law is a curious conclusion. A three-legged stool fails when the third is declared "incidental."

---

[1] The point was reasonably debated, in fact, as the first judge to consider the issue agreed with the salespersons. *See Cook v. Ohio Nat'l Life Ins. Co.*, No. 1:19-CV-195, 2019 WL 2717859 (S.D. Ohio June 28, 2019).

But that is simply an impression "from afar." Common sense suggests that the Sixth Circuit is in a much better position than this Court to interpret Ohio law.[2] For reasons of comity, then, this Court defers to the Sixth Circuit's judgment and holds that Noone is not an intended third-party beneficiary of the Ohio National-LPL Financial contract. His contract-based claims are therefore dismissed.

What remains are the unjust enrichment and tortious interference claims. Because diversity jurisdiction is invoked, "the applicable substantive law is that of the forum state, Mississippi. State law is determined by looking to the decisions of the state's highest court." *Delancey v. MedAmerica Ins. Co.*, 248 F. Supp. 3d 782, 784 (S.D. Miss. 2017) (citation omitted).

Ohio National argues that Noone cannot proceed on an unjust enrichment theory because "an express contract governed the parties' dispute." Docket No. 8 at 27. But Noone is neither a party to the contract nor, as we now know, an intended third-party beneficiary. His unjust enrichment claim seeks to recoup illicit profits outside of the contractual realm. Mississippi law permits this. *See Ground Control, LLC v. Capsco Indus., Inc.*, 120 So. 3d 365, 371 (Miss. 2013) ("Unjust enrichment applies to situations where there is *no legal contract* and the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another."). And Ohio National's supporting case does not say otherwise. *See Lee Swimming Pools, LLC v. Bay Pool Co. Constr., LLC*, No. 1:18-CV-118-LG-RHW, 2020 WL 2063865, at *3 (S.D. Miss. Apr. 29, 2020).

Noone may also proceed on his tortious interference with business relations claim. Ohio National protests that it cannot be held liable for a tort in a simple breach of contract case, where Noone was "incidentally" harmed. Docket No. 8 at 30. But the allegations here are beyond

---

[2] The contract between Ohio National and LPL Financial says that the agreement is to be construed in accordance with Ohio law.

4

incidental breach: the complaint sets forth an intentional, "coercive scheme" to take money earned by salespersons and convert it into Ohio National's profits, with "no justification." Docket No. 1 at 15. Noone has stated a claim for tortious interference under Mississippi law. *See AmSouth Bank v. Gupta*, 838 So. 2d 205, 214 (Miss. 2002). Whether he can prove all of the required elements will be determined in future proceedings.

### IV.     Conclusion

For these reasons, the motion is granted in part and denied in part. Within 10 days, the parties shall contact the chambers of the Magistrate Judge to schedule a telephonic case management conference.

**SO ORDERED**, this the 15th day of April, 2021.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE