IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CHRIS NOONE**                                                                                          **PLAINTIFF**

**V.**                                                                           **CAUSE NO. 3:20-CV-461-CWR-LGI**

**THE OHIO NATIONAL LIFE**                                                                    **DEFENDANTS**
**INSURANCE COMPANY; OHIO**
**NATIONAL LIFE ASSURANCE**
**COMPANY.; OHIO NATIONAL**
**EQUITIES, INC.**

**ORDER**

Before the Court is Defendants' motion to certify for interlocutory appeal and stay the Court's April 15, 2021 Order. Docket No. 21. The motion is fully briefed and ready for adjudication. Upon review, the Court will deny this motion.

**I.      Procedural History**

For the purpose of this Order, it suffices to say that on April 15, 2021, this Court granted Defendants' motion to dismiss Plaintiff Chris Noone's contract-based claims and denied their motion to dismiss Plaintiff's unjust enrichment and tortious interference claims. On April 29, 2021, Defendants moved to certify for interlocutory appeal and stay the Order pursuant to 28 U.S.C. § 1292(b). Plaintiff does not oppose Defendants' motion to certify.

**II.     Legal Standard**

A court may certify an interlocutory appeal under Section 1292(b) if "(1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation." *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007). Further, the Fifth Circuit has emphasized that

> [t]he basic rule of appellate jurisdiction restricts review to final judgments, avoiding the delay and extra effort of piecemeal appeals. Section 1292(b) appeals are exceptional. They are permitted only when there is a substantial difference of opinion about a controlling question of law and the resolution of that question will materially advance, not retard, ultimate termination of the litigation.

*Clark-Dietz & Associates-Engineers, Inc. v. Basic Const. Co.*, 702 F.2d 67, 69 (5th Cir. 1983).

### III.   Discussion

Defendants' motion to certify centers on their contention that there is "substantial ground for difference of opinion" regarding Mississippi's unjust enrichment and tortious interference law.[1] Docket No. 22 at 3. Accordingly, Defendants ask this Court to certify the April 2021 Order under Section 1292(b) on the grounds that review and potential dismissal of the state-law claims by the Fifth Circuit "will materially advance the ultimate termination of litigation in this case." Docket No. 22 at 13.

Defendants first argue that dismissal of Plaintiff's unjust enrichment claim "is consistent with Mississippi law." *Id.* at 10. They submit that "Mississippi courts have continued to follow the rule that a non-party to a prime contract cannot pursue quantum meruit or unjust enrichment claims against a primary contractor who—like Ohio National—had no contractual obligation to pay the plaintiff directly." *Id.* at 9. Expounding on this point in a footnote, Defendants further contend that under Mississippi law, "[c]ourts view quantum meruit and unjust enrichment as comparable causes of action." *Id.* at n.6.

Defendants misstate Mississippi law. They rely on *Walker v. Williamson*, 131 F. Supp. 3d 580, 596 (S.D. Miss. 2015), where the court opined that "[t]he only distinction between quantum meruit and unjust enrichment is the measure of recovery." But the District Court in *Walker* misstated the Mississippi Supreme Court's reasoning in *Estate of Johnson v. Adkins*, 513 So. 2d

---

[1] Defendants' memorandum in support of their motion concedes that Mississippi law applies. Docket No. 22.

2

922 (Miss. 1987). Rather than saying that "the *only* difference between quantum meruit and unjust enrichment is the measure of recovery," *Walker*, 131 F. Supp. 3d at 596 (emphasis added), the Supreme Court noted that "the measure of recovery is *a* distinction between quantum meruit and unjust enrichment." *Estate of Johnson*, 513 So. 2d at 926 (emphasis added). The use of the article "a" necessarily implies that meaningful differences other than the measure of recovery exist between the two theories of recovery. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012) (discussing the grammar canon of legal interpretation, under which "[w]ords are to be given the meaning that proper grammar and usage would assign them").

A review of relevant case law supports that this Court cannot, as Defendants suggest, conflate the standards for quantum meruit and unjust enrichment. Under Mississippi law,

> [t]he doctrine of unjust enrichment or recovery in quasi-contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.

*Koval v. Koval*, 576 So. 2d 134, 136 (Miss. 1991) (quoting *Estate of Johnson*, 482 So. 2d at 1122) (internal citations and quotations omitted). *See also Hughes v. Shipp*, -- So.3d--, 2021WL 3781387, at *2 (Miss. Aug. 26, 2021). The Mississippi Supreme Court has repeatedly affirmed that "a quasi or constructive contract rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Magnolia Federal Sav. And Loan Ass'n v. Randal Craft Realty Co., Inc.*, 342 So. 2d 1308, 1312 (Miss. 1977). In contrast, the Court has observed that "[q]uantum meruit recovery is a contract remedy which may be premised either on express or 'implied' contract." *Estate of Johnson*, 513 So. 2d at 926. Recovery on a theory of quantum merit, then, depends on "claimant's reasonable expectation of compensation" resultant

3

from a contractual, explicit or implicit, relationship between the parties, not on equitable principles. *Id.* Hence, contrary to Defendants' representations, Mississippi law distinguishes between recovery based on quantum meruit and unjust enrichment.[2]

Applying Mississippi law here, lack of a contract does not doom Plaintiff's equitable claim. Notwithstanding the absence of a contract between Defendants and Plaintiff, Plaintiff has stated a claim for unjust enrichment. *See* Docket No. 1 at 19 (alleging that "[d]ue to Ohio National's conduct alleged herein [the Complaint], it would be unjust and inequitable under the circumstances for Ohio National to be permitted to retain the benefit of its wrongful conduct"). The key is not the existence of a contract, but the presence of factors suggesting injustice. A review of the record and applicable standard under Mississippi law confirms this Court's earlier holding that "Mississippi law permits" Plaintiff's claim for unjust enrichment to proceed. Docket No. 18 at 4.

Defendants then contend that there are "grounds for difference of opinion as to the threshold validity of Plaintiff's tortious interference claim." Docket No. 22 at 13. But this argument also is unpersuasive.

Under Mississippi law, tortious interference with a contract requires a Plaintiff to prove four elements in relation to a Defendant's conduct:

> (1) That the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

---

[2] This distinction also means that Defendants' extensive discussion of quantum meruit claims in the context of subcontractor cases is inapposite to the instant issue. As such, this Court will not engage with those arguments at length here, apart from noting that such cases are neither binding on nor instructive to our analysis of Plaintiff's unjust enrichment claim.

*Cenac v. Murry*, 609 So. 2d 1257, 128-69 (Miss. 1992). In addition, "[t]he plaintiff must prove that an enforceable obligation existed between the plaintiff and another party." *Par Industries, Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998).

Plaintiff makes out the elements of a claim for tortious interference under this standard. First, he alleges that Defendants engaged in intentional and willful misconduct by "announcing that [they] would not pay, and . . . refusing to pay, trailing commissions to Plaintiff's broker-dealer." Docket No. 1 at 21. Second, he submits that Defendants "had actual knowledge that the broker-dealers would not pay the trailing commissions after Ohio National wrongfully refused to pay," thereby implicitly evincing an intention to harm Plaintiff. *Id.* Third, Plaintiff argues that "[t]here was no justification for this action," which tracks the third element. *Id.* Fourth, Plaintiff contends that "[a]s a result of [Defendants'] intentional and willful action, Plaintiff suffered actual damages and loss in the form of lost pass-through trailing commissions." *Id.* And finally, Plaintiff submits that he "has a business relationship with his broker-dealer," under which the broker-dealer pledged to pay him trailing commissions. *Id.* at 20.

In their memorandum, Defendants do not point to Mississippi case law that directly contradicts the above standard. Instead, Defendants cite to Mississippi cases involving refusals to deal. *See* Docket No. 22 at 12. Such cases do not bear on the instant matter, which concerns allegations of tortious interference with an existing contract—the contract between Plaintiff and the broker-dealer, a contract that Defendants concede exists. *See* Docket No. 20 at 4 (admitting "that Exhibit 1 to the Complaint is a copy of a selling agreement between Defendants and LPL Financial"). Defendants' citation to "case law from across the country" is similarly unavailing. Docket No. 22 at 12. While cases outside of Mississippi can persuade, they cannot and do not permit this Court to disregard applicable Mississippi law. Mississippi law controls.

5

A successful motion for interlocutory certification depends on a legitimate, substantial disagreement as to a controlling question of law. Defendants cannot manufacture significant legal disagreement simply by citing to Mississippi cases on matters distinct from, though related to, tortious interference. Nor does the purported discord between Mississippi's law of tortious interference and that of other states amount to a "substantial ground for difference of opinion about the question of law" for the purposes of Section 1292(b). There is no substantial difference of opinion, much less a circuit split, on Mississippi law to certify. Accordingly, this Court's declination to dismiss Plaintiff's tortious interference claim in the April 2021 Order cannot justify interlocutory certification.

## IV.     Conclusion

Requests to certify an interlocutory appeal are rarely granted. *See Clark-Dietz*, 702 F.2d at 69. In the past 10 years, this Court has certified an order for interlocutory appeal only twice. *See Vaughan v. Anderson Regional Medical Ctr.*, No. 3:14-CV-979-CWR-FKB, 2015 WL 10663140, at *1 (S.D. Miss. Dec. 7, 2015), *aff'd*, 843 F.3d 1055 (5th Cir. 2016), *opinion withdrawn and superseded on denial of reh'g,* 849 F.3d 588 (5th Cir.), and *aff'd,* 849 F.3d 588 (5th Cir.), *cert. denied*, 138 S.Ct. 101 (2017); *Greenwich Insurance Co. v. Mississippi Windstorm Underwriting Ass'n*, No. 3:14-CV-190-CWR-LRA (S.D. Miss. May 11, 2016), *aff'd*, 808 F.3d 652 (5th Cir. 2015).

Parties spend valuable time and resources to prepare and file motions. Recognizing this labor and expense, and the impact rulings have on the parties (and occasionally the public), this Court takes seriously its duty to carefully consider each motion that parties file, including motions for extraordinary relief. This includes a motion to certify an order for interlocutory appeal. Indeed, in considering the instant motion, this Court refrained from ruling until new law clerks began their

term, to ensure that fresh eyes considered the Defendants' arguments anew. Unfortunately for the Defendants, a review of the record and applicable law revealed that they have not met the high standard necessary to secure an interlocutory appeal.

Defendants' motion to certify the Court's April 15, 2021 Order for interlocutory appeal and stay is denied.

**SO ORDERED**, this the 10th day of September, 2021.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
